IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

JUSTIN PIERSON,               )
                              )
            Plaintiff,        )
                              )
                              )
v.                            )        No. 3:11-CV-314
                              )
FRANKLIN COLLECTION SERVICE, INC.,  )
                              )
            Defendant.        )

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Defendant Franklin

Collection Service, Inc.'s Motion for Summary Judgment as to All Claims" [doc. 12].

Plaintiff has filed a response [doc. 25], and defendant has submitted a reply [doc. 19] and a

supplemental reply [doc. 26].[1]  Oral argument is unnecessary, and the motion is ripe for the

court's determination.

Plaintiff has brought suit for alleged violations of the Fair Debt Collection

Practices Act ("FDCPA"),15 U.S.C.§ 1692, *et seq*.  For the reasons that follow, defendant's

motion will be granted, and this case will be dismissed.

---

[1] Plaintiff was permitted to supplement its original response [doc. 16], which he filed as
document 25.  Defendant filed an additional reply brief based upon plaintiff's supplemental
response.

## I.

### *Background*

Plaintiff incurred a debt with AT&T for a cell phone in the amount of $685.37. When plaintiff did not pay the amount due on the account, AT&T turned the account over to defendant for collection. To pursue collection of the debt, defendant sent a letter to plaintiff dated May 5, 2011. That letter in relevant part states:

> IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, PLEASE CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, IF ANY OR CALL (888)215-8961.
>
> ****IT WILL BE PURSUED TO A CONCLUSION****
>
> UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT THE DEBT, OR ANY PART THEREOF, IS DISPUTED THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.

Plaintiff did not submit a dispute in writing to defendant.

Defendant sent a second letter to plaintiff dated June 7, 2011, which states in relevant part:

BEWARE, OUR CLIENT, PENDING NOTIFICATION, MAY AUTHORIZE A LAW FIRM TO FILE A CIVIL LAWSUIT AGAINST YOU.

ALSO, BE ADVISED TO AVOID THE POSSIBILITY OF INCURRING COURT COST, IF ALLOWED, THIS DEBT MUST BE PAID IN FULL.

THE AMOUNT OF YOUR DEBT, CLIENTS, AND CIVIL LAWS IN YOUR JURISDICTION MAY ALLOW SUIT TO BE FILED ON YOUR CASE. CALL (888) 215-8961 IF YOU WANT TO KNOW IF YOU ARE GOING TO BE SUED.


***CAUTION***
INCLUDE YOUR FCSE CASE NUMBER AND MAIL THIS NOTICE WITH PAYMENT IN FULL
*FOR PROPER CREDIT*

ANY ATTORNEY RETAINED BY THIS FIRM WILL MEET THE REQUIRED QUALIFICATIONS TO PURSUE ALL MEANS NECESSARY TO RESOLVE THIS DEBT.

**THIS COULD BE YOUR FINAL WRITTEN NOTICE FROM US**
*THIS BALANCE MAY INCLUDE OTHER CREDITORS NOT LISTED*

On July 8, 2011, defendant received a cease and desist letter from plaintiff's counsel dated July 1, 2011.  Plaintiff filed this lawsuit on July 6, 2011, and defendant ceased all collection efforts, including not recommending that AT&T file suit to collect plaintiff's debt.

## II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

4

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

## III.

### *Analysis*

"Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Fed. Home Loan v. Javitch, Block & Rathbone*, LLP, 825 F. Supp. 2d 913, 919 (N.D. Ohio 2011)(quoting 15 U.S.C. § 1692(e)). The Sixth Circuit has stated that any alleged violation of the FDCPA must be viewed "through the lens of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)). The standard is an objective one. *Id.*; *see also Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008). "The least sophisticated debtor standard is lower than simply examining

whether particular language would deceive or mislead a reasonable debtor." *Fed. Home Loan*, 503 F.3d at 509 (quoting *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999)). "[A]lthough this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 509-10 (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000)) (internal quotation marks omitted). "The least sophisticated consumer 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 919 (N.D. Ohio 2011) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2nd Cir. 1993)).

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes. The standard thus serves a dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.

*Gionis*, 238 F. App'x at 28 (citing *Clomon*, 988 F.2d at 1318-20) (internal quotation marks and citations omitted).

6

## 15 U.S.C. § 1692e, § 1692e(5), § 1692e(10)

Section 1692e of the FDCPA prohibits a debt collector from employing "any false, deceptive, or misleading representation or means" in order to collect a debt. Within § 1692e are enumerated several categories of false or deceptive practices, which include the following:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Plaintiff alleges that defendant has violated these provisions.

Plaintiff contends that the language in the May 5, 2011 letter stating, "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, PLEASE CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, IF ANY" and "IT WILL BE PURSUED TO A CONCLUSION" when taken as a whole implies that legal action has been taken or is about to be taken. As to the June 7, 2011 letter, plaintiff contends that the reference to "A CIVIL LAWSUIT" and "TO AVOID THE POSSIBILITY OF INCURRING COURT COST, IF ALLOWED, THIS DEBT MUST BE PAID IN FULL" also indicates that legal action is about to be initiated. He claims that the language in both letters misrepresented that legal action was intended when the correspondence was sent and that there is no indication that legal action would have been taken in this case. Plaintiff further argues that there is no indication that defendant had

7

authority to proceed with legal action at the time of making these threats or that legal action was imminent. In addition, plaintiff asserts that defendant's threats were false because defendant does not file suit over such small amounts and that it does not pursue accounts beyond sending form letters.

Defendant argues that the letters do not contain threats of legal action and that plaintiff's interpretation is bizarre and idiosyncratic. The language in the May 5 letter when read with the validation notice can only be interpreted as a letter attempting to collect a debt. Defendant further argues that plaintiff has no admissible evidence that AT&T would not pursue the account or that the defendant and AT&T would not pursue legal action on the account. As to the June 7 letter, defendant argues that the language in question places with the debtor not the creditor the decision of whether to authorize legal action. The debtor can pay the debt in full or wait for AT&T to make a future decision.

Further, defendant argues that even if the court were to find the letters contain threats, defendant still is entitled to summary judgment because the proof shows that defendant had the intention to recommend to AT&T that a lawsuit be filed and that AT&T regularly has defendant retain lawyers to file lawsuits in Tennessee against consumers.

In support of its motion, defendant submitted the affidavit of Dan Franklin, President and sole owner of defendant Franklin Collection Service, Inc. He testified in relevant part as follows:

8

6.    If Franklin is unable to collect an account, AT&T gives Franklin the authority to recommend that AT&T consider filing a civil lawsuit against the consumer to collect the account.

7.    If AT&T authorizes Franklin to proceed with filing a civil lawsuit on an account, Franklin has the authority to retain an attorney to file the lawsuit.

8.    On behalf of AT&T, Franklin has regularly retained attorneys to file civil lawsuits against consumers who live in Tennessee.

. . .

11.   If Franklin had not been sued by the Plaintiff, it would have recommended that AT&T authorize filing suit against Plaintiff.

Franklin stated in his deposition that "our filing suit is just about as regular as making phone calls. I mean, that's our intent on every case we get, we're either going to sue it or collect it. And if we can't sue it and we can't collect it, then it's returned to the client."

Franklin also testified as follows in his deposition:

Q.    Well, on May 5th 2011, when this letter was sent, at that point in time on May 5th, was there any intention on behalf of Franklin to take legal action at that point in time?

A.    No, ma'am. I mean, we intend to sue everything that's given to us if they don't pay if we can do it. So if you look at it that way, yes. By just looking at this account and being May 5th and no contact or anything, there's no way of knowing whether we're going to file suit or not, but our intent is to file suit if it's not resolved.

Q.    Okay. But with this particular account there had been no efforts to collect other than sending out this letter. So at that point in time there was no actual intent to take action

9

against Mr. Pierson specifically?

A.      Well, nobody had seen the account at that time.

Also in support of its motion for summary judgment, defendant has submitted the affidavit

of Charlie H. Briscoe, a Senior Credit Analyst for AT&T.  He testified in relevant part:

> 4.      If Franklin is unable to collect an account, AT&T will consider filing a civil lawsuit against the consumer to collect the account if such action is recommended by Franklin.
>
> 5.      If AT&T authorizes Franklin to proceed with filing a civil lawsuit on an account, Franklin is given the authority to retain an attorney to file the lawsuit.
>
> 6.      AT&T places accounts with Franklin for consumers who live in Tennessee.
>
> 7.      AT&T has authorized Franklin to retain attorneys to file civil lawsuits against consumers who live in Tennessee.

<u>May 5, 2011 Letter</u>

With regard to the May 5 letter, the court concludes that even assuming without

finding that the challenged language constitutes a threat of legal action, it does not represent

a threat of action that cannot be legally taken or that defendant did not intend to take.  The

affidavits of Franklin and Briscoe as well as the deposition testimony of Franklin

demonstrate that AT&T regularly recommends that Franklin undertake legal action to collect

a consumer debt in Tennessee.  Franklin stated in his deposition that his intent is to sue on

everything given to him for collection if the debtor does not pay.  Plaintiff's argument that

10

when the May 5 letter was sent, "at that point in time" there was no intention to sue on plaintiff's account is without merit. If plaintiff's position were followed, the result would place debt collectors in an untenable position, as they would be required to forego voluntary collection efforts. The significant fact is that Franklin and AT&T held the general intent to pursue legal action if the debt could not be collected by other means. AT&T will and has authorized legal action to collect debts in Tennessee and did so during the relevant period when Franklin was attempting to collect on plaintiff's account. Plaintiff's argument that defendant did not have authority to sue is unfounded. Defendant's proof indicates that AT&T does give authority to Franklin to use legal action, and it has in the past. In addition, plaintiff's argument that defendant never made the decision to sue on the account does not advance his position. Franklin stated in his affidavit that if plaintiff had not filed suit, which stopped collection efforts, defendant would have recommended to AT&T that it authorize filing suit against the plaintiff. Plaintiff has offered no proof to contradict this factual testimony.

Plaintiff also fails to present any proof to substantiate his contention that defendant had no intention of pursuing the debt by legal means because law suits are not filed to collect small sums like his AT&T account and that defendant does not pursue debtors beyond sending letters. In fact, plaintiff testified in his deposition that he did not know whether a suit would be filed for the amount of the account. The following exchange regarding the May 5 letter occurred in plaintiff's deposition:

11

A.      [the May 5 letter] alludes to the fact that the collection agent was going to sue me.

Q.      What's deceptive about that?  Did you know the collection agent was not going to sue you?

A.      No, I did not.  I didn't know until I took action against them.

Q.      But do you have any reason to believe that this debt collection service would not have followed through with its statement that it would sue on the account?

A.      No, I did not.

Q.      As you sit here today, do you have any information or evidence that Franklin Collection would not have taken the steps to sue on the account if it needed to?

A.      I don't know what their action would have been.

. . .

Q.      All right.  In paragraph 23 of your complaint you allege defendant's threats were false, as defendant does not file suit to collect small sums such as those sought from plaintiff, nor does defendant pursue debtors beyond sending out form letters such as those at issue here.  Did I read that correctly?

A.      Yes.

Q.      What evidence do you personally have about that allegation, if any?

A.      What was your question, again?

Q.      My question is, what information do you have to make that allegation?  How do you know that this defendant does not file suit to collect these sums?  Do you know

12

that personally?

A.    No, I do not.

Q.    Are you aware of anyone who does personally know that?

A.    I have worked and know people who have been in collections, and they have said that for anything under a couple thousand dollars they're not going to bother you more than sending you letters.

Q.    So your allegation is just based on what - -

A.    Hearsay.

Q.    - - other people in the industry may have told you on a hearsay basis?

A.    Yes.

Accordingly, the court concludes that the May 5 letter did not violate § 1692e, and specifically did not violate § 1692e(5).  The letter did not threaten any action that could not be legally taken or that was not intended to be taken by defendant.  The challenged language in the letter does not violate the catch-all provision of § 1692e(10) that involves the use of "any false representation or deceptive means to collect or attempt to collect any debt."  Plaintiff has not offered any proof that adequately disputes or questions the validity of defendant's intent to use legal action to collect the debt if necessary, nor has he shown that the language was false or deceptive.

13

<u>June 7, 2011 Letter</u>

As the court concluded with the May 5 letter, even assuming without finding that the June 7 letter contains a threat of legal action, it does not represent a threat of any action that could not be legally taken or that was not intended to be taken. As discussed above, the proof shows that AT&T regularly and frequently authorizes Franklin to pursue legal action for collection claims in Tennessee and that Franklin regularly retained attorneys to file civil lawsuits against consumers living in Tennessee. The proof also shows that defendant's collection efforts were stopped because of the filing of the instant lawsuit. Plaintiff has offered no proof to counter the showings by defendant, including Franklin's assertion that it would have recommended legal action against plaintiff had he not filed his lawsuit. Defendant has presented sufficient proof, not adequately challenged by plaintiff, to demonstrate that Franklin, with client authority, has the intent to take legal action if other collection means fail. As Franklin testified, his intent is to sue every account defendant is assigned and to file suit if the account is not resolved. The representations in the June 7 letter with regard to any possible legal action do not violate § 1692e, and specifically do not violate § 1692e(5) or § 1692e(10).

Plaintiff also contends that the language "DUE ALL CREDITORS" and "THIS BALANCE MAY INCLUDE OTHER CREDITORS NOT LISTED" in the correspondence sent to him is deceptive. He argues that the least sophisticated consumer would be misled as to the nature of the underlying debt because the language contradicts the prior indication

14

that the creditor was AT&T.  Defendant argues that it is not possible for the least

sophisticated consumer to be confused as to whether he owed to AT&T the entire balance

identified or whether it included other creditors.  The court agrees with defendant and finds

that plaintiff's contention has no merit.

Both the May 5 and June 7 letters contain the following balance information

set out in the upper right-hand corner of the page:

| | |
|---|---|
| OWED TO: | AT&T |
| PRINCIPAL BALANCE: | $685.37 |
| COLLECTION FEE: | $.00 |
| BALANCE DUE: | $685.37 |
| DUE ALL CREDITORS: | $685.37 |
| FCSI CASE #: | [REDACTED] |
| CLIENT ACCOUNT NUMBER: | [REDACTED] |
| DATE OF SERVICE: | 08/02/10 |

AT&T is identified as the creditor owed the debt and the principal balance is given as

$685.37.  This exact same amount is identified as the balance due and the amount due to all

creditors.  The least sophisticated consumer would have no difficulty concluding that the debt

sought to be collected in both letters is $685.37 owed to AT&T.  The "DUE ALL

CREDITORS" information is in no way misleading.

In his response to defendant's motion, plaintiff for the first time contends that

no debt is owed to AT&T.  Plaintiff did not make this allegation in his complaint, and it is

therefore not before the court.  Nevertheless, plaintiff offers nothing other than his self-

serving testimony that he has "settled with AT&T."  He has provided no documentation to

support his contention that he paid the debt, which as noted was not an allegation in his

15

complaint. Furthermore, "[t]he law does not require [a debt collector] to verify the debt with the consumer prior to sending a validation notice." *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 920 (N.D. Ohio 2011) (citing *Smith v. Transworld Sys.,Inc.,* 953 F.2d 1025,1032 (6th Cir. 1992)); *see also Kafele v. Javitch, Block, Eisen & Rathbone, LLP*, No. 2:03 CV 638, 2004 WL 5178125, at *10 (S.D. Ohio Sept. 27, 2004) ("[T]he Sixth Circuit has recognized that the FDCPA does not require an independent investigation of the debt referred for collection.") (citing *Transworld Sys.*, 953 F.2d at 1032) (quotation marks omitted). In addition, a debt collector can rely on the representations of its client with regard to sending the validation notice to the debtor. *Michael*, 825 F. Supp. 2d at 921 (citations omitted); *see also Ducrest v. Alco Collections, Inc.,* 931 F. Supp. 459, 462 (M.D. La. 1996) (finding debt collector can rely on client's representation and it has no duty to independently investigate claims).

Plaintiff did not submit a written dispute to defendant in response to the May 5 letter, which would have triggered the requirement for defendant to "obtain verification of the debt." 15 U.S.C. § 1692g(4). Thus, defendant did not have to provide verification of the debt as called for by the validation notice requirements of § 1692g. Accordingly, defendant did not falsely represent the amount of the debt, and plaintiff's contention to the contrary is without merit.

16

## 15 U.S.C. § 1692g

"Section 1692g(a) requires debt collectors to issue a 'validation notice,' either in the initial communication with a consumer or within five days of that initial communication, that informs the consumer of certain rights including the right to make a written request for verification of the debt and to dispute the validity of the debt." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (internal quotation marks and citation omitted).

> Section 1692g(a) provides that the initial communication sent to a consumer must contain: (1) the amount of the debt, (2) the creditor's name, (3) a statement that unless the consumer disputes the validity of the debt within thirty days of receipt of the notice, the debt collector will assume the debt to be valid, (4) a statement that if the consumer does dispute the debt in writing within thirty days, the debt collector will obtain verification of the debt or a copy of the judgment, and (5) a statement that, upon the consumer's written request, the debt collector will provide the consumer with the name and address of the original creditor, if different from that of the current creditor.

*Smith v. Computer Credit, Inc.,* 167 F.3d 1052,1054 (6th Cir. 1999) (citing 15 U.S.C. § 1692g(a)).

The FDCPA requires the thirty-day validation notice, but the notice alone is not sufficient to satisfy § 1692g(a). *Id.* "A debt collector must 'effectively convey' the notice to the debtor." *Id.* (citing *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). The Sixth Circuit employs the least sophisticated consumer standard for determining whether a validation notice has been effectively conveyed for purposes of § 1692g. *Id.* (citing *Transworld Sys.*, 953 F.2d at 1028); *see also Savage v. Hatcher*, 109 F.

17

App'x 759, 762 (6th Cir. 2004) ("In determining whether a debt collector has complied with the requirements of Section 1692g(a), we apply an objective test based on the understanding of the 'least sophisticated debtor.'") (citing *Computer Credit,* 167 F.3d at 1054). "It is well-settled that courts may properly make the objective determination whether language effectively conveys a notice of rights to the least sophisticated debtor." *Savage*, 109 F. App'x at 762 (citing *Computer Credit*, 167 F.3d at 1054; *Transworld Sys.*, 953 F.2d at 1029). Further, the least sophisticated consumer standard "assumes that a Validation Notice is read in its entirety, carefully and with some elementary level of understanding." *Fed. Home Loan*, 503 F.3d at 510 (quoting *Martinez v. Law Offices of David J. Stern, P.A. (In re Martinez)*, 266 B.R. 523, 532 (Bankr. S.D. Fla. 2011)).

Plaintiff contends that the validation notice in the May 5 letter was overshadowed or contradicted by the language in the remainder of the letter demanding immediate payment. He argues that the language "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, PLEASE CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, IF ANY" is a demand for immediate payment. Plaintiff also argues that the language "PURSUED TO A CONCLUSION" was a threat, which when read with the demand for immediate payment implied legal action if the debt was not paid. This according to plaintiff resulted in the validation notice not being effectively conveyed to the least sophisticated consumer.

18

Defendant argues that the language in question does not constitute a demand for immediate payment and distinguishes the cases relied on by plaintiff, which found specific language that made a demand for immediate payment or language that shortened the thirty-day period of § 1692g overshadowed the validation notice. Defendant further argues that plaintiff's interpretation of the language at issue is bizarre and idiosyncratic and that the least sophisticated consumer when reading the May 5 letter would not be confused about his rights under § 1692g. The court agrees.

"[T]o be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Swanson*, 869 F.2d at 1225. "[A] debt collector can violate § 1692g by contradicting the required information or by 'overshadowing' it." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 759 n.5 (7th Cir. 2006). The validation notice was not contradicted or overshadowed by the language that preceded it in the May 5 letter nor does it alter the time permitted for the debtor to dispute the debt and obtain verification.

Initially, the court concludes that the language at issue does not demand immediate payment of the debt. "The critical question is whether [debtor] has been led to believe that he did not have thirty days in which to dispute the validity of the debt." *Fed. Home Loan*, 503 F.3d at 510 (citing *Computer Credit*, 167 F.3d at 1054) (internal quotation marks omitted). "[T]he most compelling cases in which 'overshadowing' has been found, the debt collector has given the debtor time limitations in which to pay (i.e. five days or ten

19

days), which contradicted the required notice that the debtor had thirty days in which to dispute the debt or to request validation of the debt." *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1043 (S.D. Ohio 1997) (and cases cited therein). Plaintiff relies on such cases, for example: *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996) (validation notice contradicted by demand for payment in ten days); *Baker v. Citibank (South Dakota) N.A.*, 13 F. Supp. 2d 1037 (S.D. Cal 1998) (letter threatened litigation and attorney fees unless immediate payment made); *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) (collector demanded bill be paid in full upon receipt of notice); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521 (E.D. Pa. 1996) (collection letter demanding immediate payment contradicted validation notice). The language in the May 5 letter makes no such demands.

The Ninth Circuit in *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997) addressed a collection letter that advised the debtor that unless he immediately called the collection attorney's office the attorney "may find it necessary to recommend to [his] client that they proceed with legal action." *Id*. at 1430. This language was followed by the validation notice advising the debtor of the thirty-day validation period. The court noted that the letter did not demand immediate payment and upheld it because it did not "threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Id*. at 1434. Defendant's May 5 letter did not threaten the thirty-day validation period by requesting the plaintiff to contact his attorney regarding potential remedies

available to defendant or what defenses plaintiff might have. Nor was the validation period endangered by the statement that the matter would be pursued to a conclusion.

In *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 3834008, at *5 (E.D. Tenn. July 23, 2013), the district court addressed a collection letter that contained the following language along with the validation notice: "If you fail to contact this office, our client may consider additional remedies to recover the balance due." The court noted that the question was whether that statement led plaintiff to believe that she did not have thirty days to dispute the debt. The court concluded that when the letter was read as a whole by the least sophisticated consumer, he or she would understand that they had thirty days to dispute the debt and that no legal action would occur until after that time. *Id*.

Also, in *Derry v. Buffalo & Associates, PLC*, No. 2:12-CV-303, 2013 WL 3865242, at 5 (E.D. Tenn. July 25, 2013), the collection letter at issue contained in addition to the validation notice the warning to plaintiff that "if you fail to contact this office, our client may consider additional remedies to recover the balance due." The court found that "nothing in the sentence at issue indicates any immediate action would be taken or that the thirty-day period is somehow compromised. The statement warns additional remedies might be sought "*if you fail to contact this office*," which is consistent with Plaintiff's right to contact Defendant." *Id*. at *6 (emphasis in original). The court found that the least sophisticated consumer reading this language in conjunction with the validation notice would know that he has thirty days to contact the debt collector. *Id*.

21

Nothing in the language at issue in the May 5 letter demands immediate payment or makes a payment demand within time limits that contradict the validation notice. Nor does the language indicate that immediate action would be undertaken or that the thirty-day notice period is endangered. The letter presents the debtor with two options, (1) the debtor should contact an attorney if he does not intend to pay the debt in full or (2) the debtor can dispute the validity of the debt within thirty days. The presentation of the information is all in the same font size and in all capital letters, and one option is not emphasized over the other. The language at issue does not contradict or overshadow the notice informing plaintiff of his rights under the FDCPA nor does it encourage the plaintiff to waive any of those rights. The court concludes that the least sophisticated consumer, who after reading the May 5 letter "in its entirety, carefully and with some elementary level of understanding," *Fed. Home Loan*, 503 F.3d at 510, would recognize that he had a right to dispute the validity of the debt, requiring the debt collector to obtain verification, and that he had a thirty-day period to do so. Thus, the court finds no violation of § 1692g.

### 15 U.S.C. § 1692f

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The section includes a nonexclusive list of conduct that constitutes "unfair and unconscionable means." In the complaint, plaintiff does not identify what alleged behavior by defendant violates § 1692f.

22

In his response to defendant's motion, plaintiff simply argues that there are questions of fact concerning defendant's intent at the time it threatened legal action and concerning whether defendant attempted to collect an amount not owed because plaintiff claims he settled with AT&T. Defendant argues that it has demonstrated that the correspondence to plaintiff did not include threats of legal action and that defendant had the intent to recommend to AT&T the pursuit of legal action, which AT&T regularly does. Defendant further argues that plaintiff has offered no proof that he paid the debt to AT&T before defendant attempted to collect it and that defendant could rely on the creditor's representation that the debt was owed.

As discussed above, even assuming the correspondence to plaintiff contains the threat of legal action, defendant had the requisite intent to pursue legal action and to recommend that course to AT&T. Defendant sufficiently demonstrated that its intent is to file suit if a debtor does not pay the debt owed. Further, as the court has already found, plaintiff's contention that the debt is not owed is without merit. Accordingly, the court finds there is no violation of § 1692f.

## IV.

### *Conclusion*

Accordingly, for the reasons stated above, defendant's motion for summary judgment will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge